IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSE DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.: 4:10cr39/RH/CAS
                                                  4:14cv82/RH/CAS

LAWRENCE BERRY, JR.,

        Defendant.

---

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant Lawrence Berry, Jr.'s,
second amended motion to vacate, set aside, or correct sentence pursuant
to 28 U.S.C. § 2255 and memorandum in support thereof.   (ECF Nos. 138,
139).   The Government has filed a response (ECF No. 143) and Petitioner
has filed a reply.   (ECF No. 150).   The case was referred to the
undersigned for the issuance of all preliminary orders and any
recommendations to the district court regarding dispositive matters.   See
N.D. Fla. Loc. R. 72.2; see also 28 U.S.C. § 636(b) and Fed. R. Civ. P.
72(b).   After a careful review of the record and the arguments presented, it
is the opinion of the undersigned that Petitioner has not raised any issue

requiring an evidentiary hearing and that the § 2255 motion should be denied.   See Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

On July 7, 2010, Lawrence Berry, Jr., and Carlos Lofton were charged in a superseding indictment with conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine ("Count One"), possession of more than 500 grams of cocaine on May 3, 2010 ("Count Two"), and possession of firearms in furtherance of drug trafficking crimes ("Count Three"), and Defendant Berry was charged with possession of a firearm by a convicted felon ("Count Four").   (ECF No. 18). Lofton was acquitted after a jury trial in October of 2010.     According to the PSR, Berry's attorney told him that he had been federally indicted in July of 2010, however, he was a fugitive until his arrest in Miami in December of 2010.   (ECF No. 56).

Defendant was represented by Paul M. Villeneuve and Gary Ira Rosenberg.   The Government moved to disqualify Attorney Villeneuve, and after a March 31, 2011, hearing, the parties reached a stipulation. (ECF Nos. 63, 66).   The Government filed a notice of its intent to seek

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

enhanced penalties on the same date.   (ECF No. 65).   After a two day

jury trial which concluded on April 4, 2011, a jury found Defendant guilty as

charged.   (ECF No. 84).

According to the final Presentence Investigation Report ("PSR"),

Defendant's adjusted offense level on Counts One, Two, and Four was 26,

and he had a criminal history category of II.   (ECF No. 90).   The

applicable guidelines range of 70 to 87 months became 120 months due to

the application of the statutory mandatory minimum enhanced sentence.

Count Three carried a mandatory five year term of imprisonment.   The

court sentenced him to a total term of 180 months imprisonment and eight

years of supervised release.   (ECF Nos. 101, 102).   Defendant filed a

letter to the court complaining about unspecified sentencing issues which

the court construed as a motion for reconsideration of sentence and

denied.   (ECF Nos. 104, 105).

Defendant appealed, challenging the sufficiency of the evidence and

the district court's exclusion from evidence of the post-arrest statements of

co-conspirator Lofton.   The Eleventh Circuit found that there was sufficient

evidence to support his convictions, and with respect to admission of the

statements, there was no error, and even if there were, it was harmless

error.   (ECF No. 117).   Defendant also challenged the district court's

enhancement of his sentence based on a drug conviction incurred more

than 25 years prior, and that was based on conduct that occurred when he

was a minor.   Again, the Eleventh Circuit found no error and affirmed his

convictions and sentence.

Defendant filed his initial motion to vacate pursuant to the prison

mailbox rule[1] on February 11, 2014, raising five grounds for relief. (ECF

No. 129 at 27).   Defendant claims therein that the motion is timely filed

because it was filed within one year and ninety days from the date the

Eleventh Circuit affirmed his convictions.   He notes that although he did

not file a petition for certiorari, he was then seeking leave to file an out of

time petition. (ECF No. 129 at 3).   Defendant's motion to vacate would

have been subject to dismissal due to his continued pursuit of direct review,

---

[1]   A pro se inmate's pleading is deemed filed at the time it is placed in the prison mailbox or
delivered to prison authorities for mailing.   *See* Houston v. Lack, 487 U.S. 266 (1988) (holding that a pro
se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the
"prison mailbox rule");   Williams v. McNeil, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (under the 'prison
mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities
for mailing); Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (absent evidence to the
contrary, court assumes that a pro se petition is delivered to prison authorities for mailing the date it was
signed).

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

but the Supreme Court denied certiorari while the motion to vacate was pending.   (ECF No. 134).   Defendant later filed a second amended motion to vacate ("motion") and memorandum in support thereof.   It is this motion, in which Defendant raises six grounds for relief, which is currently pending before the court.

## STATEMENT OF FACTS[2]

In April of 2010, the Tallahassee Police Department ("TPD") was contacted by an informant who alleged that Defendant Lawrence Berry, Jr., was bringing multiple kilograms of cocaine to Tallahassee every couple weeks, and that Carlos Lofton, co-defendant in this case, was his primary distributor in Tallahassee.   The informant provided Defendant's telephone number and the address of a townhouse, which had allegedly been rented for him by Lofton.   Shortly thereafter the informant was murdered in 2010 over a drug transaction unrelated to this case.   Investigators believed that Defendant was sexually involved with the informant's girlfriend, which provided the informant the incentive to report Defendant's activities to law enforcement.

---

[2] The statement of facts is derived largely from the facts as set forth in the PSR.   (ECF No. 90).

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

Investigators determined that Lofton had obtained utilities on two townhouses in Tallahassee on Diehl Drive and Bradford Court.    Using GPS tracking of a cellular telephone belonging to Defendant, investigators determined that Defendant was traveling from his home in Miami toward Tallahassee at the end of April 2010.

On May 1, 2010, investigators conducting surveillance on a Ford F-350 owned by Defendant at the Diehl Drive residence observed Defendant and Karl Lofton, the father of co-defendant Carlos Lofton, taking several pieces of luggage into the apartment.

No surveillance was conducted on May 2, but on May 3, investigators observed Defendant leave the Diehl Drive residence and drive to a Sprint store in Tallahassee, where he met co-defendant Lofton.    After they were in the store for an hour, officers observed Lofton leave in his vehicle and an unobserved individual drove Defendant's truck to a nearby dumpster and toss a white bag into the dumpster.    Items in bags retrieved from the dumpster included a box for a set of digital scales disguised as a CD case, a pair of latex gloves, several ziplock bags, the top removed from a ziplock

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

bag, a plastic spoon and wet paper towels which had a strong smell of cocaine and field tested positive for the substance.

On the same date, a search warrant was executed at the Diehl Drive residence.   Investigators found Defendant, Carlos Lofton and Davon Berry, Defendant's nephew.   The door locks had been changed from the landlord's locks, and only Defendant and his nephew had keys to the residence.

In the living room, investigators recovered digital scales matching the box in the dumpster trash, as well as a Romanian assault rifle with a loaded 30 round clip, in a pillowcase on the fireplace hearth about ten feet from where Defendant was sitting on the sofa.

The first, smaller bedroom was furnished only with an air mattress and a pallet on the floor with some clothes on the closet.   A tag on the single black duffle bag found in this room bore the name of Davon Berry. A four-ounce bag of cutting agents was found in the top of the closet and had a fingerprint later determined to belong to Davon Berry.

The second, larger bedroom was furnished with a full-sized bed with mattress and box springs, sheets, pillow and covers and a dresser.   There

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

was more clothing stored in this room, all in sizes XXXL, consistent with Defendant's size.   There were also documents in the room bearing Defendant's name or his nickname "Rome."   Three black duffle bags were recovered from this room.

On the kitchen counter, officers found four inserts for the digital scales/CD case where one side appeared to be a music label and the other contained operating instructions for the scale.   The inserts were lying atop correspondence addressed to Defendant.   The counter also held backing powder, which was consistent with law enforcement's hypothesis that the wet paper towels had been used to dry crack cocaine.

When investigators removed a loose portion of the press-board paneling near the stove's exhaust fan, they discovered 730.2 grams of 72% pure cocaine in three bags.   They also recovered $15,600 in cash, bundled into $1000 stacks with rubber bands.   Several bags of similar rubber bands were located in the dresser in the larger bedroom.

Defendant had $382 on his person and $677 in his vehicle.   Neither Lofton nor Davon Berry had any significant sum of money.

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

Officers recovered 14 or 15 tops of ziplock bags from the kitchen trash that were the same size as the bags containing the cocaine in approximately quarter kilograms amounts.   The bag tops, which were the same size as the tops found in the dumpster trash were found to be tainted with cocaine.   A drug-trained canine later alerted to each of the four black duffel bags, including the three taken from Defendant's bedroom and to the monies taken from his person and his vehicle.

Defendant allegedly told investigators that he was in Tallahassee seeking sex with women other than his wife.   He was arrested on state charges and released on bond on May 5, 2010.

Investigators executed a second search warrant at the Bradford Court residence and discovered another assault rifle, residue amounts of cocaine, drug paraphernalia and another bag of cutting agent.   A different jury acquitted Lofton of the charges against him.

One of Defendant's attorneys, Villeneuve, advised Defendant that he had been federally indicted on July 7, 2010.   Defendant refused to turn himself in and was arrested in Miami, Florida, on December 15, 2010.

## ANALYSIS

General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014); Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   Nyhuis, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.   Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

F.3d 1190, 1195 (11ᵗʰ Cir. 2011).   An issue is "'available' on direct appeal

when its merits can be reviewed without further factual development."

Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a

showing that the ground of error was unavailable on direct appeal, a court

may not consider the ground in a section 2255 motion unless the defendant

establishes (1) cause for not raising the ground on direct appeal, and (2)

actual prejudice resulting from the alleged error, that is, alternatively, that

he is "actually innocent."   Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at

622 (citations omitted).   To show cause for procedural default, a defendant

must show that "some objective factor external to the defense prevented

[him] or his counsel from raising his claims on direct appeal and that this

factor cannot be fairly attributable to [defendant's] own conduct."   Lynn,

365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel

can constitute cause.   *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable

on direct appeal and are properly raised by a § 2255 motion regardless of

whether they could have been brought on direct appeal.   Massaro v.

United States, 538 U.S. 500, 503 (2003); *see also* United States v.

Franklin, 694 F.3d, 1, 8 (11th Cir. 2012).   In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.   Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).   Strickland's two part test also applies to guilty pleas.   Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)).   A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.   Pericles v. United States, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991)); Rosin v. United States, 786 F.3d 873 (11th Cir. 2015).   A defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."   Padilla v. Kentucky, 559 U.S. 356, 372 (2010).   The Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected."   In re Perez, 682 F.3d 930, 932 (11th

Cir.2012) (citing Missouri v. Frye, 132 S.Ct. 1399 (2012); Lafler v. Cooper, 132 S.Ct. 1376 (2012)).   A defendant who claims that ineffective advice led him to reject a plea offer must show that but for ineffective assistance of counsel, he would have accepted the plea, and that the conviction or sentence or both under the terms of the plea offer would have been less severe than under the judgement and sentence that were imposed. Lafler, 132 S.Ct. at 1385.   A defendant's insistence that he is innocent is a "relevant consideration" that "makes it more difficult to accept his claim" that he would have agreed to a plea deal.   See Osley v. United States, 751 F.3d 1214, 1224–25 (11th Cir. 2014).   In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was

reasonable considering all the circumstances."   Strickland, 466 U.S. at

688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th

Cir. 2007).   Reviewing courts are to examine counsel's performance in a

highly deferential manner and "must indulge a strong presumption that

counsel's conduct fell within the wide range of reasonable professional

assistance."   Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009)

(quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States,

218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of

reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d

362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to

error-free representation").   Counsel's performance must be evaluated

with a high degree of deference and without the distorting effects of

hindsight.   Strickland, 466 U.S. at 689.   To show counsel's performance

was unreasonable, a defendant must establish that "no competent counsel

would have taken the action that his counsel did take."   Gordon v. United

States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler,

218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to

be unsuccessful [does not] demonstrate ineffectiveness." Chandler, 218

F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   Strickland, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland).   For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).   Or in the case of alleged sentencing errors,

a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.   Glover v. United States, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.   Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.   *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing* Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (*citing* Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between."   <u>Chandler</u>, 218 F.3d at

1313.   This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether

some reasonable lawyer could have acted in the circumstances as defense

counsel acted.   <u>Dingle</u>, 480 F.3d at 1099; <u>Williamson v. Moore</u>, 221 F.3d

1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have

been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent

attorney would have chosen it.'"   <u>Dingle</u>, 480 F.3d at 1099 (quoting <u>Adams

v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit

has framed the question as not whether counsel was inadequate, but rather

whether counsel's performance was so manifestly ineffective that "defeat

was snatched from the hands of probable victory."   <u>United States v.

Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992).   Regardless of how the

standard is framed, under the prevailing case law it is abundantly clear that

a moving defendant has a high hurdle to overcome to establish a violation

of his constitutional rights based on his attorney's performance.     A

defendant's belief that a certain course of action that counsel failed to take

might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015); Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   Gordon, 518 F.3d at 1301 (citing Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true would prove he is entitled to relief.   *See* Hernandez v. United States, 778 F.3d 1230, 1234 (11th Cir. 2015).   A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.   *See* Winthrop–Redin v. United States, 767 F .3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are ... based upon unsupported generalizations") (internal quotation marks omitted); Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004).   Even affidavits that amount to nothing more than conclusory

allegations do not warrant a hearing.   Lynn, 365 F.3d at 1239.   Finally,

disputes involving purely legal issues can be resolved by the court without

a hearing.

Ground One

Defendant first contends that his sentence violates the retroactively

applicable rulings in Moncrieffe v. Holder, 133 S. Ct. 1678 (2013) and

Descamps v. United States, 133 S. Ct. 2276 (2013).   Defendant asserts

that the application of the 21 U.S.C. § 851 enhancement was improper

because his prior state court drug conviction involved only a small amount

of marijuana that would not have been a felony under federal law.

In Moncrieffe, the Supreme Court held that an alien's Georgia state

conviction for possession of marijuana with intent to distribute was not an

aggravated felony under the Immigration and Nationality Act ("INA").   In

order to be an aggravated felony under the INA, the underlying conviction

necessarily had to be for conduct punishable under federal law.   The

Court noted that the fact of a Georgia conviction did not reveal whether

either remuneration or more than a small amount of marijuana was

involved.   Moncrieffe was tasked only with the definition of aggravated

felony as used in the INA.

In Descamps, the Supreme Court refined the process by which courts

may determine whether a past conviction meets the definition of "violent

felony" under the Armed Career Criminal Act ("ACCA").   Under the

categorical approach, a court does not consider the facts of the case and

only considers whether the state statute defining the crime of conviction

categorically fits within the generic federal definition of a corresponding

felony.   The modified categorical approach may be used when a statute is

divisible, that is, it lists a number of alternative elements or means of

committing crime that effectively create several different crimes.   In such

instance, the sentencing court may look to the record of conviction,

including documents involving the charge, plea agreement or sentence.

Descamps held that sentencing courts may not apply the "modified

categorical approach" to determine whether a prior offense was a violent

felony under the ACCA, if the underlying conviction contains a single,

indivisible set of elements.   Neither Moncrieffe nor Descamps affords

Defendant any relief.

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

The facts as set forth in the PSR in Defendant's case, to which there was no timely objection, unequivocally establish remuneration.   United States v. Patterson, 595 F.3d 1324, 1326 (11th Cir. 2010) (defendant admits for sentencing purposes, the facts in the PSR to which he does not object) United States v. Davis, 587 F.3d 1300, 1303–04 (11th Cir. 2009) (per curiam).   Law enforcement officers served a search warrant at a residence after making two controlled purchases of marijuana from Defendant, and prior to serving the warrant, they made yet another controlled buy.   (ECF No. 90, PSR ¶ 48).   Additionally, less than two weeks after this arrest, law enforcement officers observed Defendant make two sales of marijuana, before arresting him and discovering an additional 25 baggies of marijuana on his person.   (ECF No. 90, PSR ¶ 49).

Defendant contends in his reply that the PSR's reliance on information contained in a police report is improper.   He relies upon United States v. Sneed, 600 F.3d 1326, 1333 (11th Cir. 2010), which held, citing Shepard v. United States, 544 U.S. 13, 23-26 (2005), that police reports may not be used to determine whether two offenses were committed on occasions different from each other.   Defendant also argues that because

the conviction as described in the PSR differs from the conviction as described in the 851 notice, and because the PSR relied on information contained in police reports, the court must accept the characterization of the offense as described in the 851 notice for sentencing.    He further argues that the court must find that his conviction rested on the least serious of the offenses jointly listed in the 851 notice, to wit, possession with intent to distribute, which does not necessarily require remuneration. (ECF No. 150 at 9-11).    Defendant's insistence that the description of the conviction set forth in the Government's § 851 notice is controlling is unsupported.

Defendant also argues that his prior conviction should not have been used to enhance his sentence because, if charged under federal law, it would have been only a misdemeanor under 21 U.S.C. § 844.    Section 844, however, is inapposite as it pertains only to "simple possession" and not sale or distribution.    Furthermore, a felony drug offense, as defined in title 21 U.S.C. § 802(44) is "an offense that is punishable by imprisonment for more than one year under any law of the United States *or of a State* . . . that prohibits or restricts conduct relating to ... marihuana."    21 U.S.C.

§ 802(44) (emphasis added).   Thus, the prior offense need not have also

been a felony under federal law to provide the basis for an enhancement.

*See* United States v. Tremble, 933 F.2d 925 (11th Cir. 1991) (possession of

cocaine); United States v. Hansley, 54 F.3d 709 (11th Cir. 1995)

(possession of cocaine); United States v. Curry, 404 F. 3d 316 (5th Cir.

2005) (possession of marijuana in state correctional facility).   Defendant

has appended copies of relevant police reports to his reply.   The reports

only serve to confirm his identity and that the arrests in question were for

felonies, not misdemeanors.   (ECF No. 150-3 at 17-19).

Defendant has not offered copies of his criminal judgments, although

he submitted documents reflecting the state's intent to direct file his case

and prosecute him as an adult.   (ECF No 150-3 at 14-15).   In sum, he

has not shown that he is entitled to relief on any of the arguments made

within his first ground for relief.

Ground Two

Defendant contends that his conviction and sentence violate the

retroactively applicable rulings in Lafleur v. Cooper, 132 S. Ct. 1376 (2012)

and Missouri v. Frye, 132 S. Ct. 1399 (2012) because counsel misadvised

him of the benefits of accepting the Government's plea offer before such

offer expired.    He maintains that he had been offered a favorable guilty

plea "that excluded the § 924(c) offense."    (ECF No. 139 at 9).

Defendant's recollection of events is mistaken.    As is well known in

the district, the U.S. Attorney's Office for the Northern District of Florida

does not engage in plea bargaining.    The Government further asserts in its

response that there are written policies of the office providing that

"mandatory consecutive sentences are no bargaining chips to be given

away to avoid a trial."    (ECF No. 143 at 8).    Defendant's assertion in his

reply that his attorney(s) mentioned a ten-year plea, and then allowed it to

expire before he could have accepted it is unpersuasive.    Furthermore, a

plea of guilty would have required Defendant to admit to the conduct

charged in the indictment, which, to date, he has not done.    Thus, his

after-the-fact suggestion that he would have voluntarily accepted a plea

deal does not entitle him to relief.

Ground Three

Defendant asserts that one or both of his retained attorneys

performed below minimum constitutional standard during pretrial, trial,

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

sentencing and appeal.   He identifies several specific deficiencies, which will be addressed in turn herein.

First, he asserts that counsel should have filed a motion to suppress. When counsel's alleged ineffectiveness involves a failure to competently litigate a Fourth Amendment claim, in order to demonstrate actual prejudice, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.   Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Green v. Nelson, 595 F.3d 1245, 1251-52 (11th Cir. 2010).   Regardless of whether a defendant's guilt is established by the excludable evidence, the proper question is whether the outcome of the proceedings would have been different had the motion to suppress been filed and the evidence been excluded.   Jones v. United States, 224 F.3d 1251, 1259 (11th Cir. 2000); Huynh v. King, 95 F.3d 1052, 1058–59 (11th Cir. 1996); Thomas v. Newsome, 821 F.2d 1550, 1552 (11th Cir. 1987); *see also* Ward v. Dretke, 420 F.3d 479, 488 (5th Cir. 2005). Defendant contends that the affidavit submitted in support of the search warrant for 2406 Diehl Drive included "false, reckless and misleading

statements as well as intentionally omitted important statements or

information as well as intentionally omitted important statements or

information."   (ECF No. 139 at 10).   Defendant offered only conclusory

and unsupported statements in his initial motion, and explained neither

which statements in the affidavit were "false, reckless and misleading," nor

the nature of the alleged omissions.   The Government has submitted the

entire search warrant and affidavit in support thereof as an attachment to

its response.   A review of these documents does not reveal any "red flags"

that would have supported a viable motion to suppress.

     In his reply, Defendant asserts that the following material false

statements were contained therein:

> [Defendant] transports between five and fifteen kilograms of
> cocaine from the Miami area to Tallahassee on a regular basis.
> . .   Berry has felony arrest for narcotics and robbery . . .
> Surveillance indicates that Lofton does not reside at either
> apartment (Diehl nor Bradford Court).   Nor does it appear that
> full time residents occupy the apartments. . . . there was reason
> to believe that the four black duffle bags contained cocaine that
> was to be kept inside the rental property until Lofton could
> distribute it.

(ECF No. 150 at 14).

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

Some of the allegedly false information came from a confidential informant, and as reflected in the affidavit in support of the warrant, much of the information provided by the CI had been corroborated by law enforcement.   (ECF No. 143-1 at 9-12).   The information about Defendant's prior arrest history was not inaccurate, as the PSR reflects two prior arrests, albeit no convictions for robbery.   (ECF No. 90, PSR ¶¶ 60, 63).   Defendant suggests that there had been insufficient intelligence to conclusively establish the facts set forth in the affidavit, but this does not establish their falsity.   Furthermore, law enforcement conclusions about the lack of inhabitants in the two apartments ultimately were shown to be true.   Defendant has not carried his burden and he is not entitled to relief.

Next, Defendant contends that counsel failed to impeach law enforcement officers with prior inconsistent statements made at the earlier trial of co-defendant Lofton.

Defendant asserts that Case Agent Nick Robert and Roger Salmonsen testified that they both witnessed Defendant "sigh" when the cocaine was found behind the wall inside the Diehl street residence. However, Defendant claims, during Lofton's trial, both men testified that

they were outside the residence interviewing Lofton when the cocaine was discovered.

With respect to Agent Robert, Defendant is mistaken, as he did not testify about a "sigh."   At trial, after Salmonsen had given the testimony in question on direct examination, (ECF No. 98 at 254-255), on re-direct, the Government introduced a portion of the "Arrest Probable Cause Affidavit" which had been prepared contemporaneously with the events in question. In that report, prepared on May 3, 2010, Agent Salmonsen described Defendant's reaction to the discovery of the contraband as "he slumped over, breathed a sigh, and faced away when investigators located the cocaine in the kitchen."   (ECF No. 98 at 265-266).   Thus, regardless of what Salmonsen's testimony may have been at Lofton's trial, this contemporaneously prepared report bolstered the testimony he gave from his independent recollection.   There was no basis to impeach either witness on this issue and counsel's performance was not deficient.

Additionally, Defendant claims that Case Agent Roberts testified inconsistently with respect to the firearm seized from the living room of the Diehl street residence.   Defendant maintains that Roberts testified during

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

Defendant Berry's trial that the AK-47 assault rifle was exposed outside the pillowcase upon his entry into the Diehl street residence, while during Lofton's trial, Robert had testified that it was not exposed, and it took a trained eye to detect the firearm.   (ECF No. 98 at 282-283).   A review of Roberts' testimony reveals that Defendant's recollection is mistaken. Roberts testified on direct examination that the firearm was on the hearth about eight to ten feet from where Defendant Berry was sitting on the sofa without commenting on how obvious or visible it was.   (ECF No. 98 at 282-83).   On cross-examination, Attorney Rosenberg asked the witness about visible cocaine or money, and then asked if Defendant indicated that he knew there was a rifle in the living room.   Counsel elicited no testimony about whether the gun was hidden or in plain view.   (ECF No. 301-303, 306).   Because the testimony adduced at his trial was not as Defendant recalls it to have been, there was no basis for the suggested impeachment.

In his reply, Defendant expands his claims to assert that counsel should also have impeached a third officer, Officer Jason sen, who was not mentioned in the initial motion.   (ECF No. 150 at 16-17).   The

Government has not had the opportunity to respond to this portion of Defendant's allegations, in light of their belated assertion.

Agent Laursen's testimony was that when he entered the Diehl street residence, he was able to observe what he believed to be a receiver of a long gun in a pillowcase on the hearth.   (ECF No. 97 at 94).   Although he testified that he did not have to move anything to make portions of the firearm visible, from his description, it was not completely in plain view. During Laursen's testimony, the Government introduced into evidence photographs of the long gun inside the pillowcase as it appeared when law enforcement entered the room, as well as photos of the gun outside the pillowcase and the pillowcase itself.   (ECF No. 97 at 95-97).   Defendant asserts in his reply that Laursen should have been impeached with testimony Roberts gave during Lofton's trial.   Impeachment of Laursen with testimony from another witness about what the second witness recalled observing, even if permissible, could not have carried more weight than the photographs introduced by the Government showing how the gun and pillowcase actually appeared.   Defendant has not shown counsel was constitutionally ineffective.

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

Defendant next contends that his attorneys counsel failed to object to the Government's presentation of false testimony.   He asserts that Agent Corey Hale falsely testified that he had a train ticket from Miami to Jacksonville, Florida, in the name of Davon Berry, when actually the ticket was in the name of Avontae Beard, the mother of Berry's child.   (ECF No. 139 at 12).

On the first day of trial, Agent Hale was shown a series of exhibits comprised of documents seized from Defendant's dresser at the Diehl street residence.   The exhibits were offered to prove that Defendant used the master bedroom and to support the argument that he controlled the apartment and was responsible for the contraband found therein.   Hale identified Government's exhibit 30(d) as a bus or train ticket from Miami to Jacksonville.   (ECF No. 97 at 149).   He read the name on the ticket as "Davon Berry," rather than Avontae Beard, who was the "mother of Berry's child."[3]   Even if the prosecution knowingly elicited false testimony in violation of Giglio v. United States, 405 U.S. 150 (1972), the testimony was

---

[3] The PSR reflects that Defendant has a child with "Avonte Beard" and thus he presumably refers to himself rather than Devon Berry.

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

not only not material, but tangential at best.   Ponticelli v. Sec'y, Florida Dep't of Corr., 690 F.3d 1271, 1292 (11th Cir. 2012).   Furthermore, if in fact Agent Hale misspoke, the error inured to Defendant's benefit as the link between Defendant and the documents would have been stronger had Hale testified that the ticket was in the name of Defendant's child's mother rather than his nephew.   Defendant has not shown that counsel was constitutionally ineffective for his failure to challenge Hale's statement.

Fourth, Defendant claims that counsel failed to object or challenge the Government's use of his "sigh" as evidence of guilt.   He also asserts that counsel should have requested an instruction that the "sigh" could be interpreted as an innocent gesture or a sign of surprise.   This was a matter for argument (see ECF No. 98 at 373, 401), and counsel was not constitutionally ineffective for failing to object or request the proposed instruction.   In his reply, Defendant claims that counsel should have cross-examined witnesses concerning the sigh.   Such cross-examination, if intended to elicit the witnesses' opinions concerning the reason for the sigh, would have called for speculation and would not have been

admissible.    Defendant does not suggest any specific information that would have been gleaned from such questioning.

Fifth, Defendant contends that counsel's failure to object to the prosecutor's improper closing and rebuttal arguments or raise this matter on appeal was constitutionally deficient.    He suggests that the Government improperly suggested that there was evidence which was not presented to the jury, and that Defendant was required to present evidence and argument in support of his defense.    A review of the closing arguments reveals that this is not a fair characterization of the Government's closing.

Counsel's job at closing is to argue to the jury that the position he or she advances, based on the evidence presented, is the correct one. Argument includes possible interpretations of the evidence and suggestions on how to connect the proverbial dots, so the entire scheme makes sense. The Government's statement that Defendant worked at a port and therefore had access to supplies of cocaine merely suggested the possible genesis of the conspiracy.

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

Additionally, contrary to Defendant's suggestion, the Government never stated that it was Defendant's burden to prove anything; in fact it repeatedly acknowledged the Government's burden.    Assistant U.S. Attorney Simpson commented that there was no plausible alternative explanation beyond the Government's interpretation of the evidence.    He specifically referred, for instance, to the scent of cocaine on money in Defendant's pocket and noted that "[defense] counsel didn't even offer you a possibility."   (ECF No. 98 at 398-399).   This is not tantamount to shifting the burden of proof or suggesting that Defendant was required to present evidence.   Rather, the specific comment highlighted what the Government suggested was defense counsel's inability to provide an innocent explanation, because none existed.

Defense counsel did not stand silent during the closing arguments. When the Government misstated the evidence by arguing that Defendant's truck smelled like cocaine, defense counsel promptly objected.   (ECF No. 98 at 401).   In sum, the Government's arguments, taken as a whole, were not improper and counsel's performance was not constitutionally deficient.

Defendant next contends that, in light of the fact that the drugs were not seized from his person, that defense counsel should have sought a jury instruction "on proof that Berry had knowledge of the drugs and firearms" in the house.   The element of knowledge was repeatedly mentioned in the court's instructions to the jury.   (ECF No. 75).   The jury was instructed that knowledge was required to establish a conspiracy (ECF No. 75 at 6-8); possession of cocaine (*id.* at 9), aiding and abetting (*id.* at 10), co-conspirator liability (*id.* at 11), possession of a firearm in furtherance of drug trafficking (*id.* at 11-12), and possession of a firearm by a convicted felon (*id.* at 13-14).

Counsel allegedly performed deficiently when they failed to challenge the § 851 enhancement as violating the rule announced in Carachuri-Rosendo v. Holder, 130 S. Ct. 2577 (2010).   The definition of "aggravated felony" under the INA has no application to Defendant's case, and counsel were not ineffective for failing to make this claim.

Defendant also contends that counsel should have challenged the § 851 enhancement because it involved a "juvenile to adult proceeding." Although Defendant was 16 at the time of the offense conduct, he was

prosecuted as an adult.   (ECF No. 90, PSR ¶ 48).   This issue was raised at sentencing, at which time the district court cited several cases supporting the use of this conviction as a predicate for the enhancement.   (ECF No. 112 at 5-9).   Furthermore, the Eleventh Circuit also found the use of the conviction as a predicate for the enhancement to be proper.   (ECF No. 117 at 10-11).   Defendant is barred from relitigating herein issues that have been decided adversely to him and he is not entitled to relief.

Defendant's ninth ineffective assistance of counsel claim is that counsel failed to challenge the § 851 enhancement on the basis that the notice itself was deficient because it provided inadequate notice due to a scrivener's error with respect to the date of conviction.   The Government's § 851 notice states that "[o]n or about October 14, 1986, Lawrence Berry, Jr., was convicted of a charge of cannabis, sell/deliver/possess with intent, in the Circuit Court for Dade County, Florida, in case no. 84CF2057." (ECF No. 65 at 2).   October 14, 1986, was actually the date of the probation violation hearing; the conviction occurred over two years earlier on March 26, 1984.

Had counsel raised an objection, pursuant to 21 U.S.C. § 851(a)(1), the clerical mistake could have been amended at any time prior to the pronouncement of sentence.   Defendant affirmed the conviction upon the court's inquiry at sentencing.   (ECF No. 112 at 4-5).

De minimis errors in contents of the § 851 notice will not render the notice inadequate, so long as the information "serves to signal unambiguously the Government's intent to seek an enhancement based on a particular prior conviction."   Perez v. United States, 249 F.3d 1261, 1265 (11th Cir. 2001) (citing cases); United States v. Bowden, Case No. 08-11935, 2009 WL 32755, at *1 (11th Cir. Jan. 7, 2009).   Defendant relies on Bowden in his reply, contending that strict compliance with the requirements of § 851 is required.   Bowden, in which the court vacated a defendant's sentence and remanded for resentencing, is distinguishable, in that the § 851 notice in question had two errors.   In addition to the clerical error about the date, the notice also "did not unambiguously signal to Bowden that [the Government] sought mandatory life imprisonment" because the notice cited the incorrect statutory provision, which imposed only a ten-year mandatory minimum.   Bowden, 2009 WL 32755 at *1.

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

Nothing in the record in this case suggests that Defendant or his counsel had any difficulty understanding which prior conviction was to be used for enhancement purposes, and Defendant has not shown how he was prejudiced by counsel's failure to challenge the notice on this basis.   Had counsel made an objection prior to sentencing, the scrivener's error would have been corrected and no different result would have inured.

Defendant next asserts that his attorneys were constitutionally ineffective under Strickland, when they failed to call Davon Berry and the CI's girlfriend, identified in his reply as Shayla Willis, as witnesses.   He claims that these witnesses would have provided unspecified exculpatory testimony.   In his initial motion, Defendant provided no information about the testimony these witnesses would have allegedly provided, or even the CI's girlfriend's name, and there was no way to assess the merit of his claim.   In his reply, Defendant identified Ms. Willis and indicates that in addition to her and Davon Berry, he also asked counsel to call Avontae Beard and provides information about their purported testimony, none of which is under oath.

Defendant asserts that Shayla Willis would have testified about her relationship with him, and unspecified information that she provided or shared with her boyfriend regarding Defendant "in an attempt to mislead him regarding" the Defendant.   (ECF No. 150 at 28).   The effect, if any, that this testimony could have had on the proceedings is not obviously apparent.   Defendant has not shown that the failure to call Ms. Willis adversely affected the outcome of the proceedings.

Davon Berry, contends Defendant, would have testified about his and Defendant's presence in the townhouse on the day of the search, Defendant's living and rental arrangements with Lofton, that he and Defendant had no knowledge of either the cocaine hidden in the wall of the townhouse or the firearm concealed in the pillowcase.   (ECF No. 150 at 29).   As the Government noted in its response, Davon Berry was facing state charges stemming from this incident, so he would have been unlikely to testify.   Furthermore, much of the purported testimony would have been hearsay and thus inadmissible.   Finally, as noted earlier, the photograph of the long gun in the pillow case provided irrefutable evidence of what it looked like.   Even the testimony of Agent Roberts at Lofton's trial was that

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

the contents of the pillowcase were apparent because of how tightly it was wrapped.   (*See* ECF No. 150 at 18-19).

Defendant contends that Ms. Beard would have testified that the reason Defendant was in Tallahassee and frequently visiting Tallahassee was to spend time with her and his newborn baby.   This presumably would have corroborated Defendant's statement to law enforcement that he was in Tallahassee seeking sex outside of his marriage, although in the affidavit submitted with his reply he denies making this statement.   (ECF No. 150-3 at 7).   Ms. Beard would also have testified that she had never seen Defendant in possession of drugs or a firearm, and that when she picked Defendant up from jail and took him to the Diehl residence to collect his personal property, Carlos Lofton provided her with the key to enter.   The fact that Ms. Beard had not seen Defendant in possession of drugs or a firearm is not dispositive.   Although she and Defendant had been in a relationship, he did not stay with her when he was in town.   And, construed as character evidence, her testimony would have opened the door for the prosecution to introduce other evidence about Defendant's character and criminal history.   Defendant has not shown that he was

prejudiced by the failure of trial counsel to call these witnesses, and he is not entitled to relief.

Defendant's eleventh and final ineffective assistance of counsel claim, which the Government did not address, is that trial counsel failed to call co-defendant Lofton as a witness to determine whether Lofton would invoke the Fifth Amendment and would thus be unavailable as a defense witness.   He claimed that Lofton had previously agreed to testify in his behalf, although again, he did not proffer details of Lofton's purported testimony until his reply.   Defendant asserts that even if Lofton had invoked his Fifth Amendment right, he could have testified to the condition of the pillowcase at the time the warrant was executed.   This testimony, again, would have been offset by the Government's photograph of the long gun in the pillowcase at the time law enforcement entered the premises. Furthermore, a review of Lofton's testimony at his own trial did not suggest it would have placed Defendant in a favorable light.   He stated, for instance, that he had known that Defendant killed somebody.   (ECF No. 150, Exh. A at 337).   Defendant has not shown how calling Lofton to the stand would have altered the outcome of his case, and thus he has not

shown counsel performed in a deficient manner and he is not entitled to relief.

In summary, as noted above, a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   Dissatisfaction with the outcome of his trial, or a belief that, in hindsight, a particular course of action might have yielded a more favorable result, will not suffice to establish a constitutional violation under Strickland.   Defendant was represented by two able attorneys, whose performance is not rendered unconstitutional by the fact that they did not secure an acquittal in this case.

Ground Four

Defendant next claim is that he is actually innocent of the § 851 enhancement because he is actually innocent of the drug offense that provided the basis for this enhancement.   Defendant asserts that someone other than him committed the December 21, 1983, sale of marijuana for which he was convicted (PSR ¶ 48), and maintains that he will secure an affidavit or declaration from the person.   Title 21 U.S.C.

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

§ 851(e) provides a five year statute of limitations for challenging prior convictions.   Defendant's prior conviction falls well outside that window, and he may not challenge it at this juncture.

Ground Five

Defendant's fifth ground for relief is that cumulative error denied him a fair trial.   It is true that the cumulative effect of several errors that are harmless by themselves could so prejudice a defendant's right to a fair trial that a new trial might be necessary even if the errors considered individually are non-reversible. *See, e.g.*, U.S. v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005); United State v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993) (citing United States v. Pearson, 746 F.2d 787, 796 (11th Cir. 1984)); United States v. Adams, 74 F.3d 1093, 1099 (11th Cir. 1996); United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir. 1995). However, "[a] defendant is entitled to a fair trial not a perfect one." United States v. Wilson, 788 F.3d 1298, 1315 (11th Cir. 2015); Ramirez, 426 F.3d at 1353 Lutwak v. United States, 344 U.S. 604 (1953).   The cumulative error doctrine is inapplicable where the district court commits no individual errors.   United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004);

United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without

harmful errors, there can be no cumulative effect compelling reversal.");

Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) (noting that

increasing the number of non-meritorious claims raised will not support a

finding of cumulative error because "Twenty times zero equals zero.").

The Supreme Court has not recognized the cumulative error doctrine in the

context of ineffective assistance of counsel claims.[4]   However, again, in

the absence of any error, there can be no cumulative error.   *See* United

States v. Hall, 455 F.3d 508, 520 (5th Cir.2006); *see also* Yohey v. Collins,

985 F.2d 222, 229 (5th Cir.1993) (stating that because certain alleged

errors did not rise to constitutionally ineffective assistance of counsel, and

because certain other claims were meritless, a petitioner had "presented

nothing to cumulate"); *accord* Villanueva v. Stephens, 555 F. App'x 300,

---

[4]   The Eleventh Circuit has noted "the absence of Supreme Court precedent
applying cumulative error doctrine to claims of ineffective assistance of counsel."
Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009).   The court
cautioned that the Supreme Court has held that "there is generally no basis for finding a
Sixth Amendment violation unless the accused can show how specific errors of counsel
undermined the reliability of the finding of guilt."   *Id.* (quoting United States v. Cronic,
466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

308 (5ᵗʰ Cir. 2014) (citing <u>Hall</u>).    Having found no error, there can thus be

no cumulative error, and Defendant is not entitled to relief.

Ground Six

Defendant's final claim for relief is that his 924(c) conviction violates

<u>Rosemond v. United States</u>, 134 S. Ct. 1240 (2014).    The <u>Rosemond</u>

Court held that to sustain a conviction for aiding and abetting the offense of

using a firearm during a federal drug-trafficking offense, the defendant must

know beforehand that one of his co-conspirators will carry a gun.    The

facts in the case at bar are distinguishable in that in Defendant's case, the

Government argues that because Defendant was sitting in the vicinity of

the firearm, he was aware of the firearm's presence and actually

possessed it.    (ECF No. 98 at 371-373).    Defense counsel is not charged

with clairvoyance, and may not be faulted for failing to anticipate and make

arguments based on a prediction as to how the law may develop after

Defendant's conviction.    <u>Denson v. United States</u>, 804 F.3d 1339, 1344

(11ᵗʰ Cir. 2015) (citing <u>Marquard v. Sec'y for Dep't of Corrs.</u>, 429 F.3d 1278,

1313 (11ᵗʰ Cir. 2005)); <u>United States v. Fields</u>, 565 F.3d 290, 295 (5ᵗʰ Cir.

2009) ("Clairvoyance is not a required attribute of effective representation.")

Defendant claims in his reply that this is not an ineffective assistance of counsel claim, but rather a freestanding claim.   As such, it is procedurally barred because it could have been raised on direct review.

## Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has he shown that an evidentiary hearing is warranted.   Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that A[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant, and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Case Nos.: 4:10cr39/RH/CAS; 4:14cv82/RH/CAS

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The second amended motion to vacate, set aside, or correct

sentence (ECF No. 138) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 15th day of December, 2016.


s/CHARLES A. STAMPELOS
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**